# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WATERS INDUSTRIES, INC., an Illinois corporation, | ) ) ) |
| *Plaintiff,* | ) ) Case No. 1:13-cv-07191 |
| v. | ) ) Hon. Charles R. Norgle |
| OUTDOOR CAP CO., INC., an Arkansas corporation, | ) ) Mag. J. Sidney I. Schenkier ) ) |
| *Defendant.* | ) ) |

**Memorandum in Support of Defendant's Motion to Transfer to the
Northern District of Oklahoma or Alternatively to the Western District of Arkansas**

On October 8, 2013, Defendant, Outdoor Cap Co., Inc. ("Outdoor Cap"), filed a Complaint in the District Court for the Northern District of Oklahoma against Michael Waters ("Waters") seeking declaratory judgment of non-infringement and invalidity of U.S. Patent No. 8,550,651 ("the '651 Patent") (Civil Action No. 13-cv-665-CVE-FHM) ("the '665 action"). On the same day, Plaintiff Waters Industries, Inc. ("Waters Industries") filed the above-styled action against Outdoor Cap alleging infringement of the '651 Patent. On October 10, 2013, Outdoor Cap filed a First Amended Complaint in the Northern District of Oklahoma naming Waters Industries as an additional party defendant to the '665 action.

This patent dispute involves two companies and the named inventor on the patent. Each of the companies sells light emitting diode ("LED") headwear. Plaintiff Waters Industries is headquartered in West Dundee, Illinois. Waters is the sole named inventor of the '651 Patent and resides in Aspen, Colorado. Outdoor Cap is an Arkansas based company having its headquarters in Bentonville, Arkansas.

Outdoor Cap respectfully contends that, before litigation proceeds in the Northern District of Illinois, this Court should decline to entertain venue over this civil action and should, for the convenience of the parties and witnesses and in the interest of justice, transfer the venue of this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Oklahoma or, alternatively, the Western District of Arkansas. Both of these districts are more convenient and accessible to the primary witnesses and parties than the Northern District of Illinois. Similarly, relevant documents, records, and other discoverable evidence are more accessible in either of the proposed transferee forums. Further, it is believed that the primary fact witness will be the alleged individual inventor of the '651 Patent, who resides in Aspen, Colorado, and not in the forum state. Waters Industries only recently acquired ownership of the '651 Patent and, as the patent assignee, is not likely to possess many relevant documents or to employ many fact witnesses in Illinois.

For the reasons discussed below, this case should be transferred to the District Court for the Northern District of Oklahoma to be consolidated with Outdoor Cap's pending suit against Waters and Waters Industries or, alternatively, to the District Court of the Western District of Arkansas.

**FACTUAL BACKGROUND**

On April 22, 2011, Waters sent a letter to Outdoor Cap ("Exhibit A") representing that he was the owner of U.S. Patent Application Publication No. 2010/0214767 ("the '767 Application") ("Exhibit B") and alleging that certain Outdoor Cap products embodied subject matter claimed in at least some of the claims of the '767 Application.

On May 9, 2012, Waters sent another letter to Outdoor Cap ("Exhibit C") representing that he was the owner of U.S. Patent Application Publication No. 2012/0014095 ("the '095 Application") ("Exhibit D"), which was a republication of the '767 application, and alleging that

2

Outdoor Cap's HiBeam® lighted hats embodied subject matter claimed in at least some of the claims of the '095 Application.

On October 8, 2013, some of the claims included in the '767 Application and the '095 Application issued as claims in the '651 Patent entitled "Lighted Hat," naming Waters as the sole inventor and Waters Industries as the assignee. A copy of the '651 Patent is attached as to this memorandum as "Exhibit E."

As a result of the Waters letters and other contacts by him, Outdoor Cap feared that Waters would file a patent infringement action against Outdoor Cap; therefore, on the same day that the '651 Patent issued, Outdoor Cap filed the '665 action in the Northern District of Oklahoma. Correspondingly, on the same day, Waters Industries filed this action for patent infringement in the Northern District of Illinois. Meanwhile, a division of Waters Industries, Panther Vision, has apparently informed some of Outdoor Cap's major retail customers, including Wal-Mart at its headquarters in Bentonville, Arkansas, that Outdoor Cap is no longer able to supply its accused lighted hats. Because Arkansas-based Wal-Mart is a major customer of Outdoor Cap, such contact by Waters Industries could cause interference with business relations and could damage Outdoor Cap's business. (House Affidavit, ¶ 21).

Outdoor Cap has developed and held intellectual property rights for headwear in the United States for over 30 years. (House Affidavit, ¶ 4). Outdoor Cap is an Arkansas corporation having its principal offices in Bentonville, Arkansas, which is located in the Western District of Arkansas. (*Id.*, at ¶ 6). Although Outdoor Cap's lighted caps are available for sale in the State of Illinois, Outdoor Cap does not maintain a regular or established place of business in the State of Illinois, has never attempted to establish any place of business in the State of Illinois, and does not have a telephone number or mailing address in the State of Illinois. (*Id.*, at ¶ 7). Outdoor Cap

is neither registered to do business nor licensed to do business within the State of Illinois, and Outdoor Cap has never attempted to obtain any such registration or licensing. (*Id.*, at ¶ 8). Outdoor Cap does not have any employees or facilities located within the State of Illinois and does not regularly travel to the State of Illinois. (*Id.*, at ¶ 9). Outdoor Cap has three distribution locations, none of which are in the State of Illinois. (*Id.*, at ¶ 10). Less than two percent (2%) of Outdoor Cap's total gross sales of the allegedly infringing product since 2010 have been to customers in Illinois. (*Id.,* at ¶ 11).

Furthermore, little, if any, of the evidence within Outdoor Cap's control such as inventory and documents, is located in the State of Illinois; rather, all such evidence, as well as the potential witnesses affiliated with Outdoor Cap, are located in Bentonville, Arkansas. (*Id.,* at ¶ 13). In particular, the Outdoor Cap personnel most knowledgeable about the design and development of the accused product have offices in Bentonville, Arkansas. (*Id.,* at ¶ 14). Individuals most knowledgeable about the sales and marketing of Outdoor Cap's products also have their offices in Bentonville, Arkansas. (*Id.,* at ¶ 15). All financial and accounting records are created and maintained in Bentonville, Arkansas, and individuals with knowledge of such information likewise have their offices in Bentonville. (*Id.,* at ¶ 16). Documents and records relating to business operations, sales, financial and accounting records as well as design, research, development, testing, and performance of the allegedly infringing product are located in Bentonville, Arkansas. (*Id.,* at ¶ 17).

Outdoor Cap sells its products throughout the United States. (*Id.,* at ¶ 3). Outdoor Cap operates a website where products may be shipped from one of the three Outdoor Cap distribution facilities. (*Id.,* at ¶ 18). Outdoor Cap distribution facilities are located in Arkansas, California, and Texas, but none are in Illinois. (*Id.,* at ¶ 10). Outdoor Cap also utilizes large retail

outlets including Wal-Mart, Bass Pro Shop and Dick's Sporting Goods. (*Id.,* at ¶ 19). These large retailers may have locations in multiple states and are headquartered in Arkansas, Missouri and Pennsylvania, respectively; however, none are headquartered in Illinois. (*Id.,* at ¶ 19).

Bentonville, Arkansas is the county seat of the northwestern most county in Arkansas, and is located within the Western District of Arkansas. Moreover, Bentonville, Arkansas is located less than 30 miles away from the Northern District of Oklahoma. Tulsa, Oklahoma is the closest metropolitan area to Bentonville, Arkansas at about one-hundred (100) miles to the west. Regular business air travel is conducted by employees and representatives of Outdoor Cap through the Tulsa International Airport. (*Id.,* at ¶ 20). Within the past ten years, Outdoor Cap has maintained a manufacturing and assembly warehouse in Oklahoma. (*Id.,* at ¶ 22). As such, both Tulsa, Oklahoma and Bentonville, Arkansas are central and key locations to Outdoor Cap. (*Id.,* at ¶ 23).

Given the foregoing facts, and based on equity and convenience, this action should be heard before the District Court for the Northern District of Oklahoma or, alternatively, the Western District of Arkansas.

## ARGUMENT

This action should be transferred to the District Court for the Northern District of Oklahoma and consolidated with the co-pending action, or alternatively to the Western District of Arkansas, for the convenience of the parties and witnesses and in the interest of justice. For the reasons stated herein, Outdoor Cap respectfully requests that this Court transfer the action pursuant to 28 U.S.C. § 1404(a).

The change of venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). Under Section 1404(a), transfer

is appropriate where: (1) venue is proper in both the transferor court and the transferee court; (2) the transferee district is more convenient for the parties and witnesses; and (3) transfer would serve the interests of justice. *Body Sci. LLC v. Bos. Scientific Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012).

### A. Venue is Proper in Transferee Court

This action is for patent infringement, and 28 U.S.C. §1400(b) states that an action for patent infringement may be brought in the district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Outdoor Cap is headquartered in Arkansas and regularly conducts business in Oklahoma. Outdoor Cap sells the accused product throughout the United States; however, a large portion of such sales comes from Arkansas and Oklahoma areas. Further, within the past ten years, Outdoor Cap has maintained a manufacturing and assembly warehouse in the Northern District of Oklahoma.

With sales of the allegedly infringing product in various places throughout Oklahoma in addition to having maintained a warehouse in the Northern District of Oklahoma, venue is proper in Oklahoma. Similarly, Outdoor Cap resides in and has sold allegedly infringing hats in the Western District of Arkansas, and as such, venue would also be proper there.

### B. Convenience of Witnesses and Parties

District courts have discretion to decide motions for transfer on a case-by-case determination of convenience and fairness. *Body Sci. LLC*, 846 F. Supp. 2d at 991. In determining convenience and fairness, the Court must consider both the litigants' private interests as well as the public's interest. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947). When evaluating the conveniences, Illinois courts typically consider five factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to

6

sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in each forum. *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *Body Sci. LLC*, 846 F. Supp. 2d at 992; *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). Convenience of the parties and witnesses are the most important Section 1404(a) factors. *Body Sci. LLC*, 846 F. Supp. 2d at 992.

### 1. Plaintiff's Choice of Forum

In general, a plaintiff's choice of forum is given deference. *Gulf Oil Corp.*, 330 U.S. at 508. Nevertheless, the plaintiff's chosen forum is only one factor in the court's decision. *Von Holdt, Sr. v. Husky Injection Moldings Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). If the chosen forum's connections to the operative facts giving rise to the suit are relatively weak, then less weight is given to the plaintiff's forum of choice. *Id*. In patent infringement cases, the location of the alleged infringer's place of business usually has a stronger connection to the suit because the action arises out of the activities of the alleged infringer, its employees, as well as its documents. *Body Sci. LLC*, 846 F. Supp. 2d at 992.

In the present case, Outdoor Cap is the alleged infringer. Outdoor Cap's principal place of business is in Bentonville, Arkansas. Outdoor Cap's activities center around Bentonville, Arkansas and Tulsa, Oklahoma, but not Illinois. Outdoor Cap's employees and documents are also located in Bentonville, Arkansas and not in Illinois. Moreover, with less than two percent (2%) of Outdoor Cap's sales of the allegedly infringing product occurring in Illinois, the chosen forum gives relatively weak connections to the facts giving rise to the present suit, therefore less weight should be afforded to Waters Industries' chosen forum.

### 2. Situs of Material Events

In a patent infringement suit, the situs of the material events is focused "on the location of the allegedly infringing sales, or the alleged infringer's place of business." *Body Sci. LLC*, 846

7

F. Supp. 2d at 993 (quoting *Ellis Corp. v. Jensen USA, Inc.,* No. 02–7380, 2003 WL 22111100, at *3 (N.D. Ill. Sep. 9, 2003)). Where the allegedly infringing product was designed, made or sold are all appropriate considerations for determining the situs of material events. *See, e.g., Von Holdt, Sr.,* 887 F. Supp. at 188; *Body Sci. LLC,* 846 F. Supp. 2d at 994. Further, sales of the allegedly infringing product in one state are not determinative if the product was sold throughout all of the United States. *See e.g., Body Sci. LLC,* 846 F. Supp. 2d at 994; *SC Johnson & Son, Inc. v. Gillette Co.,* 571 F. Supp. 1185, 1188 (N.D. Ill. 1983).

Outdoor Cap designs and develops all products at their headquarters in Arkansas. Outdoor Cap has made only limited sales of the products in question in Illinois. As explained above, Outdoor Cap sells through a website and through major retailers. The allegedly infringing product has been sold throughout all of the United States, and therefore, the mere existence of sales in Illinois is not determinative of the situs of material events. Only a very small proportion of total sales of the accused product took place in Illinois. Since the accused product went on the market in 2010, less than 2% of the total sales have been to customers in the state of Illinois. Further, Outdoor Cap sells through large retailers, none of which are headquartered or based in Illinois. Outdoor Cap's largest retail customers include Bass Pro Shop, headquartered in Springfield, Missouri and Wal-Mart, headquartered in Bentonville, Arkansas.

After filing suit, Panther Vision, a division of Water Industries, informed some of Outdoor Cap's major retail customers, including Wal-Mart, at its headquarters in Bentonville, Arkansas, that Outdoor Cap is no longer able to supply its accused lighted hats. Because Arkansas-based Wal-Mart is a major customer of Outdoor Cap, such contact by Waters Industries could cause interference with business relations and/or could cause damage to Outdoor

Cap's business. This purposeful targeting of Outdoor Cap by Waters Industries introduces additional material events and activities in the State of Arkansas.

Along with the design, development, and alleged acts of infringement, Waters Industries' conduct toward Arkansas-based retail customers establishes the situs of the material events in Arkansas, and not in Illinois, thus favoring transfer to the District Court for the Northern District of Oklahoma, where it can be consolidated with Outdoor Cap's filed suit against Waters and Waters Industries or alternatively to the District Court for the Western District of Arkansas.

### 3. Ease of Access to Sources of Proof

As mentioned earlier, a patent infringement action compares the allegedly infringed upon patent claims against the accused product. The focus of proof is on the design, development, and engineering of the accused product. *Body Sci. LLC*, 846 F. Supp. 2d at 994. Therefore, Outdoor Cap will produce the bulk of the relevant documents and evidence, while Waters Industries production will likely consist of little more than the patent itself and perhaps documents pertaining to the conception and the invention's reduction to practice.

As the defendant, Outdoor Cap will produce all documents and evidence relating to the design, development, and engineering of the allegedly infringing product. All such documents and evidence relating to the design, development, and engineering of Outdoor Cap's lighted hat are located at their Arkansas headquarters. Similarly, documents relating to sales of the allegedly infringing product are also located in Arkansas.[1]

---

[1] In a separate patent infringement action, Waters Industries and its counsel argued for transfer to the site of the alleged infringer because the main focus of a patent infringement action is on the activities of the alleged infringer. (*See* "Exhibit F," Memorandum In Support of Defendant's Motion to Transfer Pursuant to 28 U.S.C. §1404(A) at 16, *Totes Isotoner Corp. v. Panther Vision, LLC*, No. 09-cv-1064 (S.D. Ohio. Nov. 3, 2008)). Waters Industries should not be heard in this action to take a different position.

On the other hand, Waters Industries may rely on the issued '651 Patent. The '651 Patent, as well as the prosecution history, is publically available at the United States Patent and Trademark Office. Other information relating to the '651 Patent is likely held by the inventor, Waters, residing in Aspen, Colorado, namely any information relating to conception, reduction to practice, and/or any sales, disclosures or other activities prior to the effective filing date of the '651 Patent.

Therefore, because Waters Industries does not need to provide many documents, if any, from Illinois, it would ease the burden on Outdoor Cap to provide documents and witnesses in Bentonville or Tulsa. Access of proof, therefore, would favor transfer to the Northern District of Oklahoma or alternatively the Western District of Arkansas.

### 4. Convenience of Witnesses

The convenience of the witnesses is considered the most important factor when determining whether a case should be transferred. *See, e.g., Id.*; *Bank of America, NA v. Illumination Station, Inc.*, 2011 WL 1642526, at *4 (N.D. Ill. May 2, 2011); *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill., 1999); *Rose v. Franchetti,* 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In determining the convenience of the witnesses, the court looks to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Tingstol Co. v. Rainbow Sales, Inc.,* 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998); *Schwarz v. National Van Lines, Inc.,* 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004).

Focusing on the activities of the alleged patent infringer, the most relevant witnesses will be those who know of the design, development, and business practices of Outdoor Cap. Specifically, the most important witnesses for Outdoor Cap will be the Executive Vice-President of Finance and Administration for Outdoor Cap, Jerry House, and Outdoor Cap employees, Jeremy Laney and Michelle Wood, who each reside and are based in Bentonville, Arkansas.

Other potential witnesses for Outdoor Cap would be Thomas Frank, a former employee of Outdoor Cap, who resides in Bentonville, Arkansas, and the named inventor of the '651 Patent, Waters, who resides in Aspen, Colorado. Traveling from Aspen, Colorado to the preferred forum (approximately 760 miles) would be a much shorter travel than from Aspen, Colorado to this forum (approximately 1200 miles). There may be potential for additional witnesses for Outdoor Cap, none of which are located in Illinois.

Therefore, convenience of the witnesses would favor a transfer to the Northern District of Oklahoma or the Western District of Arkansas.

     **5.**     **Convenience of Parties**

Convenience of the parties in patent infringement cases is best served when the suit is litigated where the defendant has a regular and established place of business, as well as where the alleged acts of infringement occurred in order to facilitate investigation of records and information necessary for discovery. *Body Sci. LLC*, 846 F. Supp. 2d at 997 (quoting *Anchor Wall Sys., Inc. v. R & D Concrete Products, Inc.,* 55 F. Supp. 2d 871, 875 (N.D. Ill. 1999)).

Outdoor Cap's headquarters are in Bentonville, Arkansas. Outdoor Cap's records and information concerning product research and development, as well as its witnesses, would be located in Bentonville, Arkansas. In addition, as set forth above, Outdoor Cap has maintained a manufacturing and assembly warehouse in Oklahoma within the last ten years. The allegedly infringing product is sold throughout various places in Oklahoma, and Arkansas and Oklahoma are central locations to a majority of Outdoor Cap's sales, including sales of the allegedly infringing LED headwear. Outdoor Cap maintains a regular and established business in both Oklahoma and Arkansas.

Further, Waters Industries only relatively recently acquired the rights to the '651 Patent and will likely be lacking information and personnel knowledgeable on the '651 Patent. Waters

11

Industries would be considered a much less significant source of information and evidence than would be Waters himself. As mentioned above, Waters resides in Colorado, not in Illinois; therefore, his travels would not be more burdensome coming to Oklahoma or Arkansas.

Convenience of the parties would favor a transfer at least to the Western District of Arkansas or to the Northern District of Oklahoma.

### 6. Interests of Justice

Evaluating the interests of justice relates to determining what would be the most efficient administration of the court system. *Research Automation, Inc.,* 626 F.3d at 978. In Illinois, the public interest factors include: (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to congested court dockets. *First Nat. Bank v. Guerine*, 764 N.E.2d 54, 58, 198 Ill. 2d 511, 261 Ill.Dec. 763 (Ill., 2002).

Where an allegedly infringing product is sold throughout the United States, several states share an interest in the alleged infringement. *Body Sci. LLC*, 846 F. Supp. 2d at 998. Nevertheless, the forum where the research, development, testing, marketing and sale of the infringing product occurs has a greater interest in the suit than other states. *Id*. When the only relevant activity that occurs in a forum is the sale of the allegedly infringing product, that forum does not have a greater interest than other forums. *Id*.

As previously described, Outdoor Cap sells its products throughout the United States. Outdoor Cap's product research, development, testing, marketing and initial sales all take place in Bentonville, Arkansas. Less than 2% of sales were in the State of Illinois. Illinois would not have a greater interest than any other state.

Furthermore, the Northern District of Illinois, the Northern District of Oklahoma, and the Western District of Arkansas are believed to efficiently manage their respective dockets, so there is no reason to believe that the District Courts of the Northern District of Oklahoma or the Western District of Arkansas would not be able to handle this action as efficiently as this forum.

### 7. Judicial Economy Regarding the Co-Pending Lawsuits

An Answer and Counterclaim to the present action has been filed here asserting invalidity and non-infringement of the '651 Patent. It is believed that in response to the co-pending declaratory judgment action will conversely include a counterclaim for patent infringement. In the interests of judicial economy, the pending actions should be consolidated.

## CONCLUSION

As set forth in detail above, the convenience of the parties and witnesses and the interest of justice dictate that the present action be transferred to United States District Court in Tulsa, Oklahoma, or alternatively to the District Court in Arkansas, and be consolidated with the action. Outdoor Cap has previously filed in that forum. More specifically, Outdoor Cap and its witnesses knowledgeable about the claims of Water Industries would be located in the Bentonville, Arkansas area as this is where the headquarters and principal place of business of Outdoor Cap is located. As sales and distribution of accused goods are managed at Outdoor Cap's headquarters, this is where the relevant documents and other discoverable items are principally located, stored, and maintained in the ordinary course of business. Further, as sales of all Outdoor Cap's products are orchestrated in Bentonville, sales of the allegedly infringing LED headwear would have occurred within Arkansas rather than Illinois. Lastly, Bentonville draws a close relationship to Tulsa, as Tulsa is the nearest metropolitan city to Bentonville. Outdoor Cap uses Tulsa resources for business activities and business travel and is more convenient for the action to be heard before the Northern District of Oklahoma or the Western District of Arkansas.

WHEREFORE, Defendant Outdoor Cap prays that the Court enter an Order transferring this action pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Northern District of Oklahoma, or alternatively to the Western District of Arkansas, and for any further relief the Court deems just and proper.

Dated:  October 31, 2013						Respectfully submitted,

*/s/ Marshall J. Schmitt*
Marshall J. Schmitt  (6184893)
  mjschmitt@michaelbest.com
Gilberto E. Espinoza  (6277437)
  geespinoza@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
Telephone:  312.222.0800
Facsimile:  312.222.0818

and

Shawn M. Dellegar
(*pro hac vice admission to be sought*)
  sdellegar@hjklaw.com
Mark G. Kachigian
(*pro hac vice admission to be sought*)
  mkachigian@hjklaw.com
Erin Stewart
(*pro hac vice admission to be sought*)
  estewart@hjklaw.com
HEAD, JOHNSON & KACHIGIAN, P.C.
228 West 17th Place
Tulsa, Oklahoma  74119
Telephone:  918.587.2000

*Attorneys for Defendant Outdoor Cap Co.*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WATERS INDUSTRIES, INC., an Illinois corporation, | ) ) ) |
| *Plaintiff,* | ) ) Case No. 1:13-cv-07191 |
| v. | ) ) Hon. Charles R. Norgle |
| OUTDOOR CAP CO., INC., an Arkansas corporation, | ) ) Mag. J. Sidney I. Schenkier ) ) |
| *Defendant.* | ) ) |

**Certificate of Service**

I HEREBY CERTIFY that on this 31st day of October, 2013, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and was served on the following counsel as indicated below.

| | |
|---|---|
| Timothy P. Maloney<br>Eric L. Broxterman<br>**FITCH, EVEN, TABIN &FLANNERY**<br>120 South LaSalle Street, Suite 1600<br>Chicago, Illinois 60603 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>tpmalo@fitcheven.com<br>ebroxterman@fitcheven.com |
| Glenn A. Rice<br>Vance L. Liebman<br>**FUNKHOUSER VEGOSEN LIEBMAN & DUNN LTD.**<br>55 West Monroe, Suite 2300<br>Chicago, Illinois 60603 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>grice@fvldlaw.com<br>vliebman@fvldlaw.com |

*/s/ Marshall J. Schmitt*
Marshall J. Schmitt